# No. 25-___

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

In re DIAVION DE NIRO, individually and on behalf of all others similarly situated,

*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA,

*Respondent*,

and

ARISE VIRTUAL SOLUTIONS, INC.,

*Real Party in Interest.*

**On Petition for a Writ of Mandamus to the United States District Court for the District of Nevada (No. 2:24-cv-00695-APG-EJY)**

**PETITIONER'S EXCERPTS OF RECORD – VOLUME 1 OF 1**

Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com

*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DIAVION DE NIRO, individually, and on behalf of similarly situated individuals,

      Plaintiff

v.

ARISE VIRTUAL SOLUTIONS, INC.,

      Defendant

Case No.: 2:24-cv-00695-APG-EJY

**Order Denying Plaintiff's Motion to Certify Order for Interlocutory Appeal**

[ECF No. 63]

I previously ordered plaintiff Diavion De Niro and two opt-in plaintiffs to arbitration and stayed their claims pending arbitration. ECF Nos. 60, 62. De Niro moves for certification of an interlocutory appeal from these orders under 28 U.S.C. § 1292(b). ECF No. 63. Arise opposes.

I may certify an interlocutory appeal from an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" if "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Interlocutory appeals may be granted only in "extraordinary cases" because section 1292(b) "was not intended merely to provide review of difficult rulings in hard cases." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). The party seeking an interlocutory appeal bears the burden to show it is appropriate. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

De Niro asks that I certify the following question to the Ninth Circuit:

Whether notice to employees of the pendency of claims that may affect their rights, brought under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), may, or should, precede adjudication of a motion to compel arbitration.

ECF No. 63 at 3. This statement presents two questions that I will consider separately: "may" and "should."

First, De Niro requests that I certify the question whether a ruling on notice to the proposed collective group may precede a ruling on a motion to compel arbitration. In *Harrington v. Cracker Barrel Old Country Store, Inc.*, the Ninth Circuit recently held that "where the existence and validity of an arbitration agreement remains in dispute, a district court is not required to rule on the arbitrability of absent employees' claims prior to authorizing notice." *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 684 (9th Cir. 2025). The order of decision is not subject to any "bright-line rule." *Id.* So a district court may rule on notice issues before ruling on a motion to compel arbitration of absent opt-ins' claims.

This principle may also extend to motions to compel arbitration with respect to named plaintiffs. But even so, whether a district court may decide notice issues before arbitrability has no impact on this case. My previous orders compelling arbitration did not determine that I must decide arbitrability first, only that I may. *See* ECF No. 60 at 3 (declining to decide certification first "in this case" as an exercise of my discretion "for case management purposes"); *see also Delara v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:19-cv-00022-APG-NJK, 2020 WL 2085957, at *6 (D. Nev. Apr. 30, 2020) (declining to follow the Fifth and Seventh Circuit approaches imposing a bright-line rule requiring district courts to decide arbitration issues first). Exercising that discretion, I determined that I should first address the motion to compel arbitration of De Niro's claims. ECF No. 60 at 3-4. Even if I were permitted to address notice first, I would not have. So resolving the "may" question would not materially advance this litigation.

Second, De Niro requests that I certify the question whether a ruling on notice "should" precede a ruling on a motion to compel arbitration. To distinguish her uses of "may" and

1   "should" in the proposed certified question, I construe De Niro's use of "should" as an argument

2   that notice issues "must" be resolved before deciding whether to compel arbitration.  A

3   categorical rule requiring district courts to decide notice issues before arbitration issues certainly

4   would impact my previous orders in this case.  But the few circuits that have adopted a

5   categorical rule have adopted the opposite rule: requiring district courts to rule on arbitration

6   first. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019); *Bigger v.*

7   *Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020).  When presented with a related question,

8   the Ninth Circuit declined to adopt any "bright-line rule." *Cracker Barrel*, 142 F.4th at 684.  The

9   Ninth Circuit reiterated that the "proper means of managing a collective action" is "largely a

10  question of case management" that is left to "substantial judicial discretion." *Id.* (quoting

11  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018)).  So no circuit has

12  adopted the bright-line rule that De Niro seeks: that notice rulings must precede any ruling on a

13  pending arbitration motion, even for a named plaintiff already before the court.

14          De Niro cites many district court orders that decided notice issues before addressing

15  various arbitration issues.[1]  But none of these cases holds that a district court categorically must

16  decide a motion to send notice before a motion to compel arbitration.  She also relies on several

17  cases that did not involve any pending motion to compel arbitration and instead focused on how

18  to conduct the certification analysis.[2]  So De Niro has not shown that there is a substantial basis

19  _____

20  [1] *See, e.g., Rittmann v. Amazon, Inc.*, No. C16-1554-JCC, 2024 WL 4932745, at *5 (W.D. Wa.
    Dec. 2, 2024) (deciding to certify collective action in the absence of a "renewed motion to

21  compel arbitration," noting that such a motion "may be resolved later"); *Zeman v. Twitter, Inc.*,
    2024 WL 4032051, at *5 (N.D. Cal. Sept. 3, 2024) (holding that the fact that some opt-in

22  plaintiffs "may ultimately be barred from joining this case by arbitration agreements does not
    prevent the Court from conditionally certifying a collective action at this notice stage").

23  [2] *See, e.g., Rittmann*, 2024 WL 4932745, at *5, *motion to certify appeal denied*, No. C16-1554-
    JCC, 2025 WL 331031 (W.D. Wash. Jan. 29, 2025) ("The Court has yet to receive Defendants'
    renewed motion to compel arbitration, and it does not need to reach this issue on the instant

for difference of opinion about whether a district court must address a motion for notice to a proposed collective before a motion to compel arbitration.

In sum, resolving De Niro's "may" question would not materially advance this litigation, while resolving De Niro's "must" question does not involve substantial ground for difference of opinion. I therefore deny her motion.

I THEREFORE ORDER that Diavion De Niro's motion to certify order for interlocutory appeal **(ECF No. 63) is DENIED**.

DATED this 29th day of July, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

---

motion."); *Greene v. Omni Limousine, Inc.*, No. 2:18-CV-01760-GMN-VCF, 2019 WL 2503950, at *4 (D. Nev. June 15, 2019) ("Defendant has yet to file a motion to compel arbitration against Plaintiffs."). In one case that De Niro cites, *Brooks v. C.H. Robinson Int'l, Inc.*, the court decided to address a certification motion prior to a pending motion to compel arbitration of a named plaintiff's claims. No. 4:16-CV-00939761-HFS, 2017 WL 10506772, at *3 (W.D. Mo. May 9, 2017). But the court there did not squarely hold that it had to consider certification before arbitrability. It also relied extensively on out-of-circuit district court opinions and lacked the benefit of subsequent caselaw. More to the point, the district court in *Cracker Barrel* ruled on the defendant's motion to compel arbitration of a named plaintiff's claims before ruling to certify the collective action. *See Gillespie v. Cracker Barrel Old Country Store Inc.*, No. CV-21-00940-PHX-DJH, 2023 WL 2734459, at *3, 5 (D. Ariz. Mar. 31, 2023) (finding that a putative arbitration agreement was not enforceable against the sole named plaintiff over which the court had personal jurisdiction). The Ninth Circuit affirmed the district court's ruling denying the motion to compel arbitration. 142 F.4th at 681-82. The cases discussed here and in my prior orders suggest that when and how to address a motion to for notice under the FLSA depends on the discretion of the district court—which must manage the case—and not on a bright-line rule that ignores the timing, details, and procedural posture of such a motion.

4

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DIAVION DE NIRO, individually, and on behalf of similarly situated individuals,

     Plaintiff

v.

ARISE VIRTUAL SOLUTIONS, INC.,

     Defendant

Case No.: 2:24-cv-00695-APG-EJY

**Order (1) Granting Motion to Compel Arbitration and Stay Proceedings, (2) Denying Motion for Conditional Certification, (3) Denying Request for Pretrial Conference, (4) Denying Motion for Leave to Supplement, and (5) Ordering Parties to Meet and Confer**

[ECF Nos. 5, 23, 26, 53]

Diavion De Niro, individually and on behalf of similarly situated individuals, sues Arise Virtual Solutions, Inc., alleging that Arise violated the Fair Labor Standards Act (FLSA) by failing to pay De Niro the minimum wage. De Niro alleges that Arise avoided paying De Niro and other "Customer Support Professionals" (CSPs) the minimum wage for training and work-related expenses by misclassifying them as "Independent Business Owners" (IBOs) or agents of IBOs instead of Arise employees. De Niro filed a motion for conditional certification on the same day she filed the complaint. ECF No. 5. Arise moved to compel arbitration and stay this lawsuit less than three weeks later. ECF No. 23. Though De Niro was the sole party plaintiff[1] at

---

[1] A collective action under the FLSA is a "mass action" where "aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases—capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation, except as the workers may separately so agree." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018). And plaintiffs who join the collective have "the same status in relation to the claims of the lawsuit as that held by the original named plaintiffs." *Id.* (simplified). The FLSA merely distinguishes those "specifically named as a party plaintiff in the complaint" from those who "did not so appear." 29 U.S.C. § 256(a); *see also Campbell*, 903 F.3d at 1104. Accordingly, I refer to both original named plaintiffs and opt-in plaintiffs as "party plaintiffs" below.

1  the time Arise filed its motion to compel arbitration, two party plaintiffs, Giselle Rickelman and

2  Joseph Haymon, subsequently opted in to this collective action. ECF No. 27.

3        I grant the motion to compel arbitration and stay this lawsuit and deny the motion for

4  conditional certification as moot.  I deny the request for a pretrial conference (ECF No. 26), deny

5  the motion for leave to supplement (ECF No. 53), and order the parties to meet and confer.

6  **I.    PRIORITY OF MOTION TO COMPEL ARBITRATION**

7        The parties dispute which motion I should decide first.  De Niro argues that I should

8  grant conditional certification first and decide the motion to compel arbitration only after issuing

9  notice to putative opt-in plaintiffs.  Arise argues that I should compel De Niro to arbitration first

10  because arbitration is a threshold issue and, as a result, I should deny her motion for conditional

11  certification as moot.

12        The Ninth Circuit has not addressed whether a district court should or must decide a

13  plaintiff's motion for conditional certification before or after a timely motion to compel

14  arbitration of that plaintiff's claims.  The Fifth Circuit has held that a district court must decide a

15  motion to compel arbitration before a motion for conditional certification under the FLSA

16  because the arbitration issue is a "threshold question." *Reyna v. Int'l Bank of Com.*, 839 F.3d

17  373, 377 (5th Cir. 2016) (quotation omitted).  Courts have generally followed this categorical

18  "decide arbitration before certification" rule.[2]

19

20  _____

[2] *See, e.g., Bell v. Arise Virtual Sols., Inc.*, No. 4:21-CV-00538-RK, 2022 WL 567841, at *3
21  (W.D. Mo. Feb. 24, 2022) (adopting the categorical rule from *Reyna* and collecting cases); *Otis v. Arise Virtual Sols., Inc.*, No. 12-62143-CIV, 2013 WL 12106056, at *4 (S.D. Fla. Aug. 5,
22  2013) (adopting the categorical rule); *Bogle v. Wonolo Inc.*, No. 21-CV-08878-MCS-KS, 2022 WL 1124973, at *4 (C.D. Cal. Apr. 8, 2022) ("Whether named and opt-in plaintiffs must
23  arbitrate their claims should be decided well before the nationwide notification issue is reached." (quotation omitted)); *Hughes v. S.A.W. Ent., LTD*, No. 16-CV-03371-LB, 2017 WL 6450485, at *9 (N.D. Cal. Dec. 18, 2017) ("If the arbitration provisions the named plaintiffs signed with the

2

De Niro argues that I should address the motion for conditional certification first because "whether potential opt-in plaintiffs are subject to valid arbitration agreements is quintessentially a merits-based determination that should be addressed at the second stage of the conditional certification process." ECF No. 37 at 12. De Niro observes that, unlike in the Fifth and Seventh Circuits, district courts in the Ninth Circuit (including me) generally send notice of an FLSA collective action to potential opt-in plaintiffs even if those opt-in plaintiffs allegedly have valid arbitration agreements. *See Delara v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:19-cv-00022-APG-NJK, 2020 WL 2085957, at *6 (D. Nev. Apr. 30, 2020) (declining to follow the Fifth and Seventh Circuit approaches); *Cuevas v. ConAm Mgmt. Corp.*, No. 18CV1189-GPC(LL), 2019 WL 5320544, at *4 (S.D. Cal. Oct. 21, 2019) (collecting cases). But in *Delara*, I was considering who should receive notice after I certified the collective action because the defendant was arguing that putative plaintiffs who had signed arbitration agreements should not receive notice. *Delara*, 2020 WL 2085957, at *5-6. *Cuevas* addressed whether the court should consider arbitration agreements signed by putative opt-in plaintiffs in deciding a motion for conditional certification. In contrast, the question here is whether I should first compel a party plaintiff to arbitration before deciding whether to certify.

De Niro's arguments do not persuade me that I should decide certification before the motion to compel arbitration in this case. First, deciding the motion to compel arbitration does not prejudge the "merits of the action" that De Niro brings under the FLSA, but is instead an exercise of my discretion to supervise the "notice process for case management purposes." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). As De Niro recognizes, several

---

defendants are enforceable, the plaintiffs cannot pursue these cases in court on behalf of either themselves or other similarly situated [individuals].").

1    CSPs that Arise compelled to arbitration have prevailed on the merits in arbitration. *See* ECF

2    Nos. 5-6; 5-7.  Second, in cases like *Delara*, delaying consideration of putative opt-in plaintiffs'

3    alleged arbitration agreements may avoid impractical and inefficient discovery regarding a

4    potentially large set of absent opt-in plaintiffs with potentially differing arbitration agreements.

5    *See Delara*, 2020 WL 2085957, at *6.  But cumbersome discovery is not an issue here because

6    Arise moves to compel De Niro to arbitration, the very plaintiff who moved to provide notice to

7    potential opt-in plaintiffs.  Finally, if a plaintiff seeking conditional certification ultimately

8    cannot bring her claims in federal court, the court may need to repeat the "similarly situated"

9    analysis if another party plaintiff moves for certification.  This party plaintiff may have a

10   different arbitration agreement, signed in different circumstances, that is governed by different

11   laws from De Niro's arbitration agreement.  The party plaintiff may also be represented by

12   different counsel with a different theory on how to describe the collective. *See Campbell v. City*

13   *of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018) (holding that to be "similarly situated" for

14   the purposes of conditional certification, all "party plaintiffs must be alike with regard to some

15   material aspect of their litigation") (emphasis omitted).  These factors likely would change the

16   similarly situated analysis, so judicial efficiency counsels against deciding a motion for

17   conditional certification brought by a plaintiff who is subject to a valid arbitration agreement.

18   For these reasons I address arbitration first.

19       **II.    MOTION TO COMPEL ARBITRATION**

20       The Federal Arbitration Act (FAA) "establishes a national policy favoring arbitration

21   when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346,

22   349 (2008).  Section 2 of the FAA provides that an arbitration agreement "shall be valid,

23   irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

4

revocation of any contract." 9 U.S.C. § 2.  Accordingly, a party seeking to compel arbitration "has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

The parties focus on three distinct agreements:

- **(1) Master Services Agreement (MSA),** which governs the overall relationship between Arise and IBOs. *See* ECF No. 25-1.

- **(2) Statements of Work (SOWs),** which describe customer support services that IBOs provide to specific Arise clients. *See, e.g.*, ECF No. 25-2.

- **(3) Acknowledgement and Waiver Agreement (AWA),** which describes the overall relationship between Arise, IBOs, and CSPs like De Niro. *See* ECF No. 25-10.

Arise argues that De Niro must arbitrate her claims because of the arbitration agreements in each of these three documents.[3]  De Niro responds that Arise cannot enforce the MSA and SOWs against De Niro because she did not sign either agreement.  She also argues that the arbitration agreement in the AWA is unconscionable and thus unenforceable.

Challenges to the validity of an arbitration agreement come in two forms: "[o]ne type challenges specifically the validity of the agreement to arbitrate" while "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).  "Challenges to the contract's validity are considered by the arbitrator in the first instance." *Cox v. Ocean View Hotel*

---

[3] The parties label all three arbitration agreements as the "Arbitration Agreement." But I will address the effect of the AWA arbitration provision separately below.

5

1  *Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  But if "the crux of the complaint" attacks the

2  arbitration provision itself, then I "must decide whether the arbitration provision is invalid and

3  unenforceable." *Id.* (simplified).  Here, neither party disputes that a court, not an arbitrator, must

4  decide whether the arbitration clauses are enforceable against De Niro.  Because the validity of

5  the arbitration clauses is the crux of the dispute here, I will decide these questions.

6  **A.  Law Applicable to the AWA**

7  De Niro does not dispute that she signed the AWA.[4] *See* ECF No. 37 at 19.  But De Niro

8  challenges the validity of its arbitration provision.  "Before a federal court may apply state-law

9  principles to determine the validity of an arbitration agreement, it must determine which state's

10 laws to apply." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010).  Where, as here,

11 "there is no federal interest in supplanting the otherwise applicable choice-of-law rule," courts

12 exercising federal question jurisdiction apply the forum state's choice-of-law rules. *Cal. Dep't of*

13 *Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1089 (9th Cir. 2022) (cleaned up).

14 So I apply Nevada choice-of-law rules.

15 Nevada law generally gives effect to choice-of-law provisions in a contract. *See*

16 *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1064 (Nev. 2014) (en banc).  But if there

17 is no choice-of-law provision, then Nevada courts apply the substantial-relationship test.

18 *Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993).  "Under this test, the state

19

20

21

22

23

---

[4] De Niro does not argue that Arise may not enforce the AWA even though Arise is not a signatory of the AWA.  The AWA states that De Niro agrees "that Arise and any client of Arise are intended third party beneficiaries of this agreement, and the rights and remedies hereunder, and any of them jointly or severally shall have the right to enforce this agreement." ECF No. 25-10, ¶ 12.  Under Nevada law, a nonsignatory may enforce an arbitration agreement against a signatory under certain circumstances. *See RUAG Ammotec GmbH v. Archon Firearms, Inc.*, 538 P.3d 428, 435 (Nev. 2023).  Because De Niro does not challenge Arise's ability to assert rights under the AWA, I do not address that issue.

6

1  whose law is applied must have a substantial relationship with the transaction; and the

2  transaction must not violate a strong public policy of Nevada." *Id.*  Which state has the most

3  substantial relationship to the contract depends on (a) the "place of contracting," (b) the "place of

4  negotiation of the contract," (c) the "place of performance," (d) the "location of the subject

5  matter of the contract," and (e) the parties' "domicile, residence, nationality, place of

6  incorporation and place of business." *Id.* (quotation omitted).

7        The AWA does not contain a choice-of-law provision.  Arise argues that Florida law

8  governs the AWA because the SOWs and MSA contain choice-of-law provisions that Arise can

9  enforce against DeNiro.  De Niro responds that Nevada law governs the AWA because under

10  Nevada choice-of-law rules applicable to the AWA, Nevada has greater contacts with De Niro's

11  claims and applying Florida law would conflict with Nevada public policy.

12        Though the SOWs and the MSA contain choice-of-law provisions, De Niro did not sign

13  those agreements.  Even if I considered Arise's argument, raised for the first time in reply,[5] that

14  it can enforce the SOWs and MSA against De Niro under "agency" and "estoppel" theories, I

15  would reject it. ECF No. 41 at 9-12; *see generally RUAG Ammotec GmbH v. Archon Firearms,*

16  *Inc.*, 538 P.3d 428, 434 (Nev. 2023) (en banc) (listing agency and estoppel as bases "for binding

17  a nonsignatory to an arbitration agreement").  For regardless of whether the SOWs and MSA

18  bind De Niro, it does not follow that the choice-of-law provisions from the SOWs and the MSA

19  apply to the AWA.  The choice-of-law provisions in the MSA and SOWs exclusively refer to

20  those agreements, and not to any other agreement. *See* ECF No. 25-1 at 8, ¶ 19.3 (stating that

21  "this agreement" is governed by Florida law); ECF No. 25-2 at 6, ¶ 14 (stating that "this SOW"

22

23  _____

[5] *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider
arguments raised for the first time in a reply brief.").

1    is governed by Florida law).  Arise does not argue that the AWA incorporated those choice-of-

2    law provisions.  Nor does it show that De Niro otherwise agreed to have the AWA interpreted

3    under Florida law.  So, no choice-of-law provision applies to the AWA.

4          I therefore turn to the substantial-relation test.  Arise entered into an MSA and SOWs

5    with Venture Health Corp., which is incorporated in Virginia. ECF Nos. 25-1 at 2; 25-2 through

6    25-9.  Venture, in turn, entered into the AWA with De Niro. ECF No. 25-10 at 2.  De Niro is a

7    Nevada resident and worked as a CSP from her home in Nevada. ECF Nos. 1 at 2, ¶ 3; 5-2 at 1.

8    Though Arise is a Florida corporation that is mentioned throughout the AWA, Arise is not a

9    party to the AWA. *See* ECF Nos. 25 at 3-4; 25-10.  As a result, the place of contracting, the place

10   of negotiation, and the residence of the parties are neutral between Nevada and Venture Health's

11   place of business.  But the subject matter of the AWA is De Niro's customer service work that

12   she completed for Venture in Nevada, and De Niro performed the contract in Nevada.  These two

13   factors weigh in favor of applying Nevada law.  Because Nevada has the most substantial

14   relation to the AWA, I apply Nevada law in interpreting it.[6]

15   **B.    Unconscionability**

16         De Niro argues that the AWA's arbitration agreement is unenforceable because it is

17   unconscionable under Nevada law.  She claims it is procedurally unconscionable because she

18   was not adequately made aware of its contents and substantively unconscionable due to its

19   allocation of arbitration costs.

20

21

_____

22   [6] Even if I applied Florida law, it would not change the outcome.  Nevada and Florida law
     regarding unconscionability are similar with respect to the relevant issues. *See Palm Beach*

23   *Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. Dist. Ct. App. 2004) (requiring both
     procedural and substantive unconscionability and describing both in a way consistent with
     Nevada law).

Under Nevada law, an arbitration agreement is unconscionable only if it is both procedurally and substantively unconscionable. *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885 (Nev. 2023). A contract clause is procedurally unconscionable if "a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Id.* (quotation omitted). A contract clause is substantively unconscionable if its "terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy." *Id.* at 886 (quotation omitted). Unconscionability is evaluated on a "sliding scale," such that "if one type of unconscionability is greater, the other may be lesser." *Id.* "Although the party seeking to enforce an arbitration clause bears the burden of proving the clause's valid existence, any party opposing arbitration must establish a defense to enforcement." *Gonski v. Second Jud. Dist. Ct. of State ex rel. Washoe*, 245 P.3d 1164, 1169 (Nev. 2010), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (Nev. 2018) (en banc).

### 1. *Procedural Unconscionability*

De Niro argues that the AWA arbitration agreement is procedurally unconscionable for three reasons. First, "it is a contract of adhesion drafted exclusively by Arise with no meaningful opportunity for Plaintiff De Niro or other Arise CSP's to negotiate." ECF No. 37 at 21. Arise responds that even if the arbitration agreement is a contract of adhesion, it is enforceable under Nevada law. Next, De Niro argues that the AWA arbitration agreement does not provide a copy of the applicable arbitration rules. Arise responds that this does not make it procedurally unconscionable, and that De Niro would benefit from any lack of specificity about which rules apply because the agreement allows the arbitrator to apply the rules that best ensure fairness.

9

Finally, De Niro contends that "the arbitration clause itself is buried amidst the document, replete with legalese." *Id.* at 22.  De Niro emphasizes the lack of headings or indicators that would "call to the individuals' attention" that the agreement contained an arbitration clause. *Id.*  Arise argues that the arbitration agreement's contents are clear and not inconspicuous.

Contracts are procedurally unconscionable under Nevada law only if a party lacks a "meaningful opportunity to agree" to the contract's terms due to "unequal bargaining power." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 41 (Nev. 2018).  For instance, an agreement is procedurally unconscionable if a business surprises workers with the agreement, requires them to sign the documents in a dimly lit and noisy entryway in a short period of time, and prevents them from taking the agreement to another location to review. *FQ Men's Club, Inc. v. Doe Dancers I*, No. 79265, 2020 WL 5587435, at * 2 (Nev. Sept. 17, 2020); *see also Burch v. Second Jud. Dist. Ct. of State ex rel. Cnty. of Washoe*, 49 P.3d 647, 650 (Nev. 2002) (finding procedural unconscionability where the party was unable to review a home warranty agreement until after executing the agreement).  Nevada law requires that a party have a "meaningful opportunity to agree" to a contract, not that the parties actually engage in bilateral negotiation in drafting the contract. *See D.R. Horton*, 96 P.3d at 1162-63.  The failure to include the applicable arbitration rules in an agreement supports a finding of procedural unconscionability, but only "to a small extent." *Henderson v. Watson*, No. 64545, 2015 WL 2092073, at *2 (Nev. Apr. 29, 2015).  Though an arbitration agreement is procedurally unconscionable if it is "actually inconspicuous," such as by being "in smaller print" or "buried in an endnote or exhibit," courts may not require "an arbitration clause to be more conspicuous than other contract provisions." *U.S. Home Corp. v. Michael Ballesteros Trust*, 415 P.3d 32, 41 (Nev. 2018) (en banc).

Turning to her first argument, De Niro does not dispute that she was able to review the AWA at a place of her choosing and sign it digitally after reviewing its contents. De Niro instead argues that because she invested in necessary equipment to perform her job "in anticipation of beginning work for Arise," she "had no choice but to accept the terms being offered if [she was] going to have an opportunity to earn back [her] out-of-pocket expenses." ECF No. 37 at 21. But De Niro does not allege or show that she attempted to bargain with Arise over the arbitration provision, or that Arise would have blocked such an attempt. Moreover, it is unclear whether De Niro or other CSPs signed the AWA arbitration agreement before or after acquiring the office equipment. In their declarations, Haymon and De Niro both state: "Before I began this work, Arise required me to purchase all equipment necessary to set up my home office." ECF Nos. 5-2 at 1; 5-3 at 1. Arise Senior Manager of Contracting, Viviana Castro, states that "all Agents who provide call center services through an [IBO] on the Arise® Platform enter an Acknowledgement and Waiver Agreement similar to the ones [De Niro] entered, and which contain an arbitration agreement and class/collective action waiver." ECF No. 25 at 3. These statements suggest that CSPs needed to both purchase office equipment and sign the AWA before they began "work" or "call center services." But they do not show that CSPs had to purchase office equipment before signing the AWA. De Niro thus has not met her burden to show that Arise improperly induced De Niro to agree to the arbitration clause by springing it on her only after she had sunk costs into purchasing equipment.

De Niro's latter two arguments challenge the formatting of the AWA arbitration agreement. The arbitration agreement is printed in regular type, located on the first page of a three-page agreement, and no less conspicuous than other contractual terms. Indeed, roughly half of the text of the AWA is the arbitration provision. So the arbitration agreement was not

actually inconspicuous or buried.  And while the AWA does not state which rules would be

applied in a particular dispute, it states that the "nature of the claims asserted shall determine

which body of [the American Arbitration Association (AAA)] rules will apply" and that the

"AAA's rules are available for review at www.adr.org." ECF No. 25-10 at 2, ¶ 7.  Because the

AWA referred to the rules that would be applied in arbitration, the failure to expressly list them

in the AWA could be deemed procedurally unconscionable but only to a small extent.  For these

reasons, the AWA is at most only minimally procedurally unconscionable.

## 2. *Substantive Unconscionability*

De Niro argues that the AWA arbitration agreement is substantively unconscionable

because it "may require cost-splitting." ECF No. 37 at 22.  As noted above, the AWA states that

arbitration proceedings will be governed by the AAA's rules and that the AAA decides which

rules apply based on the nature of the claims.  De Niro argues that these provisions are

ambiguous because they do not specify whether the AAA Commercial Rules or the AAA

Employment Rules would apply to De Niro's claims.  Though De Niro does not argue that

arbitration under the Employment Rules would be substantively unconscionable, she claims that

arbitration under the Commercial Rules would require her to share the costs of arbitration with

Arise.  Such cost-sharing, she argues, would effectively deprive her of a forum for her claims.

Arise responds that the Commercial Rules are not likely to apply and thus De Niro's cost-

splitting concerns are unfounded.

The Supreme Court of Nevada has found substantive unconscionability when "the

existence of large arbitration costs could preclude a litigant from effectively vindicating her

rights in the arbitral forum." *D.R. Horton*, 96 P.3d at 1165 (cleaned up).  The plaintiff bears the

burden of showing a defense to enforcement of an arbitration agreement. *Gonski*, 245 P.3d at

1169.  For that reason, Nevada courts are likely to agree with the Supreme Court of the United

1  States that if "a party seeks to invalidate an arbitration agreement on the ground that arbitration

2  would be prohibitively expensive, that party bears the burden of showing the likelihood of

3  incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000); *see*

4  *also U.S. Home Corp. v. Church*, No. 64489, 2015 WL 4611924, at *1 (Nev. July 31, 2015)

5  (holding arbitration agreement was not substantively unconscionable because "the record

6  contains no evidence" that arbitration would be "cost-prohibitive"). De Niro must thus show that

7  there is a likelihood that the Commercial Rules are cost-prohibitive and will apply to her claims.

8      De Niro has not established that such a likelihood exists. The mere fact that the nature of

9  the claims determines which rules will apply does not necessarily constitute an unconscionable

10  ambiguity. The AWA refers to the online version of the AAA rules, which provide guidance on

11  which rules apply to a given dispute. The AAA Employment Rules state that they apply to

12  disputes arising from "independent contractor agreements for workplace disputes and other types

13  of employment agreements or workplace agreements." *See* American Arbitration Association

14  Employment Arbitration Rules,

15  https://www.adr.org/sites/default/files/EmploymentRules_Web_3.pdf, at 9. This statement does

16  not exclude application of the Employment Rules to independent contractor disputes. Indeed,

17  Arise's counsel avers that the Employment Rules, not the Commercial Rules, have governed all

18  83 of Arise's arbitrations in which De Niro's counsel has participated. ECF No. 42 at 2. This

19  history suggests that the "nature of the claims" standard is unambiguous.

20      De Niro cites no analogous arbitration against Arise involving the AWA that was decided

21  under the Commercial Rules. Instead, De Niro asserts that "Arise is sure to argue that she is not

22  an employee and that any dispute regarding her pay is commercial in nature" because she is an

23  independent contractor. ECF No. 37 at 23. De Niro has not provided evidence to suggest that

Arise would pursue such arguments.  Regardless, the Employment Rules state that they apply to independent contractor agreements.  Even if the AAA applied the Commercial Rules to De Niro's claims, the Commercial Rules state that "[t]he AAA will apply the Employment Fee Schedule to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization" when "the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements." *See* American Arbitration Association Commercial Arbitration Rules, https://www.adr.org/sites/default/files/CommercialRules_Web_1.pdf, at 10.  De Niro thus has not shown that the Commercial Rules are likely to apply and result in cost-prohibitive fees.

For these reasons, De Niro has not met her burden to show a likelihood that the arbitration would be cost-prohibitive.  Thus, her argument that enforcement of the AWA arbitration agreement would have an unconscionable "chilling effect" on other litigants also fails. ECF No. 37 at 26; *cf. Lim v. TForce Logistics, LLC*, 8 F.4th 992, 996, 1004 (9th Cir. 2021) (holding that, under California law, an arbitration agreement governed by the Commercial Rules was substantively unconscionable because it would have a "chilling effect").  The AWA arbitration agreement is not substantively unconscionable.

### C.    Conclusion

The AWA arbitration agreement is not unconscionable under Nevada law.  Because De Niro concedes that Arise may otherwise enforce the AWA against her, I compel arbitration of De Niro's claims against Arise.  Because Arise requested a stay of this case pending arbitration, I stay the case with respect to De Niro's claims instead of dismissing them. *See Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024) ("When a district court finds that a lawsuit involves an arbitrable

1  dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay

2  the proceeding.").

3    Two other CSPs, Rickelman and Haymon, have opted into this case as party plaintiffs.

4  ECF Nos. 27 at 2; 27-1.  "The FLSA leaves no doubt that every plaintiff who opts in to a

5  collective action has party status."[7] *Campbell*, 903 F.3d at 1104 (quotation omitted).  These

6  plaintiffs opted in a few days after Arise filed its motion to compel arbitration, so Arise did not

7  have the opportunity to include them in its motion to compel arbitration.  In its reply, Arise

8  claims that the opt-in plaintiffs are subject to the same valid arbitration agreement as De Niro.

9  ECF No. 41 at 8.  Counsel for De Niro, who also submitted the opt-in consent forms for

10  Rickelman and Haymon, suggests that there may be additional arguments that would bar

11  compelling the opt-in plaintiffs to arbitration. ECF No. 37 at 15.  In the interest of resolving this

12  dispute efficiently, I order counsel for Arise and counsel for plaintiffs Rickelman and Haymon to

13  meet and confer to determine whether, and on what basis, Rickelman and Haymon are subject to

14  a valid arbitration agreement.  If the parties agree on a disposition as to these plaintiffs now that

15  they have the benefit of my analysis in this order, they may file a stipulation reflecting that

16  agreement.  If they do not agree, then the parties will file a joint status report by December 16,

17

---

18  [7] After compelling the sole named plaintiff to arbitration in an FLSA suit, district courts have

19  generally permitted other opt-in plaintiffs without valid arbitration agreements to continue
   prosecuting their claims in the same suit, though with some variation in the precise disposition of

20  the case. *See, e.g., Sypniewski v. Domino's Pizza, Inc.*, No. 24-11330, 2024 WL 4571403, at *5
   (E.D. Mich. Oct. 23, 2024) (requiring that the case become an "individual action" unless the

21  collective could identify a named plaintiff not subject to arbitration, and staying that case
   pending arbitration or until "the Court grants a motion for leave to amend and substitute a new

22  named plaintiff"); *Myers v. TRG Customer Sols., Inc.*, No. 1:17-CV-00052, 2017 WL 5478398,
   at *7 (M.D. Tenn. Nov. 15, 2017) (dismissing claims of a plaintiff compelled to arbitration but

23  acknowledging that "opt-in plaintiffs' claims remain pending," and granting opt-in plaintiffs 30
   days to file a motion to substitute the named plaintiff with appropriate plaintiffs "who believe in
   good faith that they did not sign arbitration agreements").

2024 outlining their disputes and proposing a briefing schedule if they anticipate further motions to compel arbitration.

### III.    MOTION FOR CONDITIONAL CERTIFICATION

Because I compel arbitration of DeNiro's claims, I deny her motion for conditional certification as moot, without prejudice to other opt-in plaintiffs moving to certify. *See Bell v. Arise Virtual Sols., Inc.*, No. 4:21-CV-00538-RK, 2022 WL 567841, at *13 (W.D. Mo. Feb. 24, 2022); *Hughes v. S.A.W. Ent., LTD*, No. 16-CV-03371-LB, 2017 WL 6450485, at *1 (N.D. Cal. Dec. 18, 2017).

### IV.    CONCLUSION

I THEREFORE ORDER that:

1)  Arise Virtual Solutions, Inc.'s motion to compel arbitration **(ECF No. 23) is GRANTED** and Diavion De Niro's claims are **STAYED** pending arbitration;

2)  De Niro's motion for conditional certification **(ECF No. 5) is DENIED** as moot, **WITHOUT PREJUDICE**;

3)  Arise's request for a pretrial conference **(ECF No. 26) is DENIED** as moot;

4)  Arise's motion for leave to supplement **(ECF No. 53) is DENIED** as moot; and

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

ER-021

5)  Counsel for Arise and counsel for Giselle Rickelman and Joseph Haymon must meet and confer to discuss whether, and on what basis, Rickelman and Haymon are subject to valid arbitration agreements.  If the parties agree on a disposition as to those plaintiffs, then they will file a stipulation reflecting that agreement.  If they do not agree, then the parties will provide a joint status report by December 16, 2024 outlining their disputes and proposing a briefing schedule if they anticipate further motions to compel arbitration.

DATED this 20th day of November, 2024.


_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

17